United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

COLLABORATION PROPERTIES, INC.,
Plaintiff,
v.
POLYCOM, INC.,
Defendant.
_____________________________________/

AND RELATED COUNTERCLAIMS.
_____________________________________/

No. C-02-4591 MMC (EMC)

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF NONPRIVILEGED DOCUMENTS AND FURTHER RESPONSES TO INTERROGATORIES (Docket No. 320)**

Plaintiff Collaboration Properties, Inc. ("CPI") has filed suit against Defendant Polycom, Inc., claiming that certain Polycom products infringe various CPI patents. Currently pending before the Court is CPI's motion to compel production of documents and further responses to interrogatories. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, and good cause appearing therefor, the Court hereby GRANTS in part and DENIES in part CPI's motion. The Court also orders a further meet and confer as provided below.

## I. DISCUSSION

A. Interrogatories Nos. 33-49

Defendant Polycom, Inc. refuses to answer Interrogatories Nos. 33-49 on the basis that, through its previous interrogatories, CPI has already exceeded the 50-interrogatory limit imposed by Judge White. According to Polycom, because most of the previous interrogatories asked for

United States District Court
For the Northern District of California

information about *all* of the accused Polycom products (totaling 26 different products), each interrogatory had 26 discrete subparts.[1]

In its motion to compel, CPI argues that its previous interrogatories did not contain discrete subparts even though they asked about all of the accused Polycom products. However, CPI does not cite any authority to support this argument and the only reasoning it provides is that, "if Polycom's contention were correct, CPI would have only been allowed to ask *two* interrogatories total about each of the Accused Polycom products, despite those questions being the same for each product." Mot. at 7. This reasoning is not persuasive. Moore's treatise notes that "a party cannot avoid the numerical limits by asking questions about *distinct subjects*, but numbering the questions as subparts." 7-33 Moore's Fed. Prac. -- Civ. § 33.30[2] (emphasis added); *see also Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998) (stating that interrogatory subparts are to be counted as one interrogatory if they are logically or factually subsumed within and necessarily related to the primary question).

The Court therefore denies CPI's motion to compel responses to Interrogatories Nos. 33-49. The Court does not address whether or not CPI would be entitled to exceed the 50-interrogatory limit because CPI made no such motion pursuant to Federal Rule of Civil Procedure 33(a). *See* Fed. R. Civ. P. 33(a) ("Leave to serve additional interrogatories shall be granted to the extent consistent with the principles of Rule 26(b)(2)."). However, given that the Court previously gave CPI leave to serve four additional interrogatories addressing aspects of Polycom's invalidity contentions, *see* Docket No. 313 (order of 9/13/04), and given that at least one of those interrogatories encompasses the matters at issue, the Court orders the parties to meet and confer to determine if the parties can reach an agreement on the substantive issues raised herein. This meet and confer shall be in person and shall take place prior to the hearing on Polycom's motion for a protective order regarding CPI's fourth set of interrogatories (*i.e.*, before October 14, 2004).

---

[1] Polycom also argues that Interrogatories Nos. 33-49 themselves contain discrete subparts.

B. Documents Exchanged Between Polycom's Engineers and Former Litigation Counsel

According to Polycom, documents exchanged between its engineers, Avi Bachar and/or Zigi Gavish, and its former litigation counsel are protected by the attorney-client privilege.[2] *See* Hamm Decl., Ex. K (Polycom's privilege log). CPI contends that there has been a waiver of the privilege because Polycom has asserted the advice-of-counsel defense with respect to CPI's charge of willful infringement. *See Mushroom Assocs. v. Monterey Mushrooms, Inc.*, No. C-91-1092 TEH (PJH), 1992 WL 442892, at *3 (N.D. Cal. May 19, 1992) ("'The deliberate injection of the advice of counsel into a case waives the attorney-client privilege as to communications and documents relating to the advice.'") (quoting *Handgards, Inc. v. Johnson & Johnson*, 413 F. Supp. 926, 929 (N.D. Cal. 1976)). There is no dispute that Polycom has asserted this defense.

The Court finds first that the documents at issue do fall within the attorney-client privilege. At the hearing on the motion to compel, Polycom represented to the Court that the documents were created either by or at the behest of its former litigation counsel. The privilege log for the documents supports this representation -- *e.g.*, the dates for the documents indicate that they were prepared either at or after the time the lawsuit was filed by CPI, the documents were exchanged between Polycom's engineers and its former litigation counsel, and the subject matter appears to relate to the issues litigated herein.

Having found that the documents are in the first instance privileged, the Court must now address whether this privilege has been waived. According to CPI, there has been a waiver because Polycom sent the documents to its willfulness opinion counsel, Hoyt Fleming, who considered the documents in formulating his opinion. In response, Polycom argues that there has not been a waiver because, even though the documents were sent to Mr. Fleming, he never actually looked at the documents -- precisely because the documents might contain privileged information. In particular, Polycom points out that Mr. Fleming states he did not open the e-mail attachment containing the documents in question and thus never saw them. CPI argues that Mr. Fleming must have looked at the documents because there was no way he could have determined that the documents involved

[2] Polycom has not asserted the work product privilege with respect to these documents.

United States District Court
For the Northern District of California

potentially privileged communications with counsel without viewing the documents. However, as pointed out by Polycom, it was reasonable for Mr. Fleming to surmise that the documents might contain privileged information since it would be unusual for the engineers to comment on the patents of which Polycom was accused of infringing unless asked to do so by Polycom's attorneys. In short, CPI has not presented sufficient evidence to rebut Polycom's evidence that Mr. Fleming did not look at the documents.

CPI argues, however, that, even if Mr. Fleming did not see the documents, the privilege has still been waived because they are relevant to the state of mind of Polycom as the alleged infringer. *See Dunhall Pharm. v. Discus Dental, Inc.*, 994 F. Supp. 1202, 1204 (C.D. Cal. 1998) ("[I]n a willful infringement analysis, the issue is the state of mind of the alleged infringer."). Even if documents informing Polycom's state of mind were deemed waived by virtue of assertion of reliance on advice of counsel, the problem here is that CPI has not provided any evidence that the state of mind of the engineers who authored or received the documents can be imputed to Polycom. CPI has not, for example, offered any evidence indicating that the engineers are high-level officers whose statements may be imputed to Polycom.[3] *Cf.* Fed. R. Civ. P. 30(b)(6) (stating that an organization may designate an officer, director, or managing agent, or other persons who consent to testify on its behalf). Nor has CPI presented any evidence, circumstantial or otherwise, suggesting that the knowledge of the engineers in question were transmitted to Polycom's management.

Even if such evidence had been presented, the Court would not find a the waiver extended to these documents. There are substantial policy considerations that weigh against waiver even though Polycom's state of mind may be at issue. The documents at issue are communications between Polycom and its former *litigation* counsel; such communications lie at the core of what is protected by the attorney-client privilege. In considering the temporal scope of privilege waivers resulting from an advice-of-counsel defense in patent litigation, courts have held that, generally, any such waiver does not extend to litigation-related communications after the complaint is filed. In *Dunhall*, the court observed:

---

[3] As pointed out by Polycom, CPI could have deposed the engineers to ascertain their opinions on the patents at issue but it chose not to do so.

> This temporal limitation follows from the enhanced interest in protecting against disclosure of trial strategy and planning. Following the filing of the lawsuit, defense counsel is engaged in critical trial preparation, often including analysis of the weaknesses of their client's case. Such analysis, while likely related to the subject matter of the asserted defense, is fundamentally different from a similar pre-litigation analysis. In comparison to work product produced prior to the filing of the lawsuit, litigation-related work product deserves greater protection.

*Dunhall*, 994 F. Supp. at 1206.

Most recently, in a thoughtful and comprehensive analysis of the issue, Magistrate Judge Brazil of this District reached a similar conclusion, holding that the waiver resulting from assertion of the advice-of-counsel defense to willfulness did not extend to communications between the defendant and trial counsel which had no involvement in providing pre-litigation advice. *See Sharper Image Corp. v. Honeywell Internat'l Inc.*, 222 F.R.D. 621, 643-46 (N.D. Cal. 2004). In so holding, Judge Brazil noted that, "in patent litigation between competitors, disabling a defendant from having a confidential relationship with its lead trial counsel about matters central to the case would cause considerable harm to the values that underlie the attorney-client privilege and the work product doctrine" and would place the defendant at a "considerable disadvantage." *Id.* at 643. Moreover, given the otherwise generally broad scope of the waiver, extending to the subject matter of the advice given by advice counsel on which the defendant relies (including information which informs the reasonableness of that reliance, *see id.* at 632-33), it is unlikely that limiting the waiver in this temporal fashion will substantially prejudice the plaintiff. *See id.* at 644. The limitation on the waiver applies even where the plaintiff contends the willfulness of the infringement is continuing through the litigation. *See id.* at 644-45. Otherwise every communication about infringement between client and litigation counsel would be fair game. *See id.*

United States District Court
For the Northern District of California

This Court agrees with the conclusions reached in *Dunhall* and *Sharper Image*.[4] Unless any waiver of the attorney-client privilege respecting communications with litigation counsel is circumscribed so as to not to extend to litigation-related communications with trial counsel,[5] it is difficult to imagine how any frank communication between the client and litigation counsel on the subject of infringement could be shielded from disclosure.[6] Waiver of the attorney-client privilege and work product doctrine in the context not only strikes at the core of these privileges, but it also seems far afield from the central (though not sole) purpose of the implied waiver doctrine -- to ensure as a matter of fairness that the defendant not be permitted to assert reliance on advantageous advice obtained from opinion counsel while shielding from discovery contradictory or adverse information received in connection with that advice.

For the foregoing reasons, the Court denies the motion to compel with respect to the documents exchanged between Polycom's engineers and its former litigation counsel.

C. Documents Relating to Polycom's Engagement of Its Wilfulness Opinion Counsel

Apparently, Polycom engaged not only Mr. Fleming as its willfulness opinion counsel but also Norman Klivans. CPI asks the Court to compel Polycom to produce documents related to the

---

[4] The Federal Circuit's recent decision in *Knorr-Bremse Systeme Fuer Natzfahrzeuge GmbH v. Dana Corp.*, Nos. 01-1357, -1376, 02-1221, -1256, 2004 U.S. App. LEXIS 19185 (Fed. Cir. Sept. 13, 2004) supports the conclusion herein. In holding that a patent defendant's invocation of the attoney-client-privilege or work product privilege does not warrant an adverse inference as to willful infringement, the court cautioned against risking intrusion upon "full communication and ultimately the public interest in encouraging open and confidential relationships between client and attorney." *Id.* at *18.

[5] In the case at bar, the documents in question were created either just prior to the filing of the lawsuit or after. There appears to be little doubt that they were created in anticipation of the litigation at the instance of litigation counsel.

[6] While CPI points out that documents prepared by litigation counsel were ordered produced in *Thermos Co. v. Starbucks Corp.*, No. 96 C 3833, 1998 U.S. Dist. LEXIS 17753 (N.D. Ill. Nov. 3, 1998), that case is not dispositive. The *Thermos* court recognized the importance of protecting communications between the client and trial counsel and concluded there is a very *limited* waiver with respect to litigation counsel documents. *See id.* at *13-14 (stating that the scope of the waiver "is more limited with regard to the opinion work product of trial counsel" and that "waiver as to trial counsel extends only to documents containing 'potentially damaging information' or expressing 'grave reservations respecting the opinion letter'"). It is clear that the *Thermos* court envisioned a limited waiver even though the test it actually articulated for waiver was ambiguous and could be read otherwise -- *i.e.*, allowing for a broad waiver of any document prepared by trial counsel that contained "'potentially damaging information.'" *Id.* at *14. To the extent *Thermos* is inconsistent with *Dunhall* and *Sharper Image*, this Court finds *Thermos* unpersuasive.

United States District Court
For the Northern District of California

engagement of Mr. Klivans. Polycom argues that it does not have any such documents in its possession, custody, or control. Essentially, the issue here boils down to whether Polycom has done a diligent search for documents related to the engagement of Dr. Klivans. Because CPI has presented sufficient evidence supporting its concerns about the search conducted by Polycom, the Court grants the motion to compel with respect to this issue and orders Polycom to provide a declaration describing its search for responsive documents and certifying that no such documents were located. Such declaration should be provided to CPI before the October 14 hearing.

D. E-mails Exchanged Between Non-Attorney Employees

The final discovery dispute concerns 58 e-mails identified in Polycom's privilege logs. *See* Brier Decl., Exs. V-W (privilege logs); Brier Decl., Ex. X (letter of 9/14/04 from H. Brier to A. Ramani, identifying 58 e-mails by Bates stamp). The 58 e-mails were all communications between non-attorney employees of Polycom but they forwarded correspondence with an attorney. *See, e.g.*, Brier Decl., Ex. V (POLY1346284-86; describing document as "Email correspondence re SIP in ViaVideo with forward strong of communication with Vexler, Adam (Attorney)"). CPI argues that "the forwarded portions of the email actually containing the communication of counsel may be privileged" but that "the email between the employees, and other emails in the email thread, are only privileged if the employees discuss the substance of the legal advice or the employees' intent to seek legal advice." Mot. at 12. Because "Polycom has not demonstrated that *all* portions of [the 58] emails are privileged, and CPI only seeks production of the non-privileged portions," CPI argues that Polycom should provided redacted copies of the 58 e-mails. Mot. at 12 (emphasis added).

Polycom has since provided CPI with redacted copies of the e-mails but, according to CPI, those redactions are still overbroad. For example, Polycom seems to have redacted information showing even the author and recipient of each withheld email. *See* Reply at 6-7 (citing Brier Decl., Ex. D). At the hearing on the motion to compel, the Court ordered the parties to meet and confer regarding the redactions. More specifically, the Court ordered Polycom's counsel to show to CPI's counsel (for litigation counsel's eyes only) the nonredacted copies of the e-mails, with Polycom reserving its right to assert any applicable privilege, in order to discuss more meaningfully the proper scope of any privilege and correlative redactions. Polycom's counsel expressed concern about this

United States District Court
For the Northern District of California

procedure -- not because disclosure of the documents would give CPI an unfair advantage but rather because, in the future, a person or entity could argue waiver by Polycom because the e-mails were shown to CPI, a third party, in spite of the specific Court-ordered reservation of right of Polycom to assert any applicable privilege. The Court permitted Polycom's counsel to provide authority for this argument.

On October 6, 2004, Polycom's counsel provided a letter brief citing a 1929 case from the Second Circuit (*Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter*, 32 F.2d 195 (2d Cir. 1929)) and a treatise by E. Epstein for "'the proposition that disclosure of a privileged communication, even pursuant to an erroneous order of the court or pursuant to a subpoena, operated as a definitive waiver for all time and with respect to all parties.'" Letter of 10/6/04 from M. Celio to Court, at 1. The Court does not find this to be clear authority in support of Polycom's argument.

First, Polycom's counsel conceded that the treatise noted a split in authority on the issue. *See also* 2 Paul R. Rice, Attorney-Client Privilege in the United States § 9:25, at 64 (2d ed. 1999) ("[C]ourts generally hold that when production of privileged communications is *judicially compelled*, compliance with the order does *not* waive the attorney-client privilege that should have shielded the communications from disclosure.") (emphasis added). The authority holding that there is no waiver emphasizes that when disclosure is judicially compelled it cannot be said to be voluntary. *See, e.g.*, *id.* (discussing judicially compelled disclosures as involuntary); 24 Wright *et al.*, Fed. Prac. & Proc. § 5507, at 578-79 (1986 ed.) (emphasizing that disclosure must be "voluntary" in order for there to be a waiver).

Second, the case law implicated by Polycom's counsel does not appear to be on point, involving judicially compelled disclosures but not discussing whether there has also been a judicially sanctioned *reservation* of the privilege. *See id.* at 579 (noting that "parties can stipulate that a disclosure is not a waiver and some courts have honored non-waiver clauses imposed by a discovery order"); *cf. Fox v. California Sierra Fin. Servs.*, 120 F.R.D. 520, 527 (N.D. Cal. 1988) (stating that, "where . . . information has been voluntarily and selectively disclosed to the SEC without steps to protect the privileged nature of such information, fairness requires a finding that the attorney-client privilege has been waived as to the disclosed information and all information on the same subject";

United States District Court
For the Northern District of California

thus, suggesting that disclosure will not effect a waiver of attorney-client privilege claim if client reserves right to assert claim before making disclosure); *see also Teachers Ins. & Annuity Ass'n v. Shamrock Broadcasting Co.*, 521 F. Supp. 638, 646 (S.D.N.Y. 1981) (noting that "a third alternative exists" instead of "absolute waiver at the time of disclosure, potentially discouraging corporate cooperation with the SEC" or "no waiver whatsoever for purposes of subsequent litigation" -- *i.e.*, "waiver only if the documents were produced without reservation; no waiver if the documents were produced to the SEC under a protective order, stipulation or other express reservation of the producing party's claim of privilege as to the material disclosed").

Moreover, it is, of course, common practice to submit contested documents to *in camera* review by a court; certainly, it cannot be seriously contended that such disclosure to a court waives the attorney-client privilege notwithstanding the fact that the procedure entails disclosure to a third party (*i.e.*, the court). Permitting the parties to review and discuss arguably privileged documents can greatly facilitate the efficacy of the meet-and-confer process in resolving discovery disputes and thus furthers the letter and spirit of Federal Rule of Civil Procedure 37(a)(2) (requiring the parties to confer before bringing motion to compel) as well as Rule 1 (requiring that Federal Rules be construed and administered to secure the "just, speedy, and inexpensive determination"). The Court notes that this process is especially appropriate in the instant case because Polycom has not asserted that disclosure would result in an unfair advantage to CPI.. Rather, Polycom claims that the documents are irrelevant, and its concern is, as noted above, preservation of the privilege with respect to future third parties. Accordingly, the Court concludes that the meet and confer and limited disclosure mandated by the Court in this context does not waive the attorney-client privilege.

The Court's order at the hearing therefore stands and the parties are to meet and confer as described above. The meet and confer shall take place before the October 14 hearing.

///

///

///

///

## II. CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part CPI's motion to compel. The Court also orders the parties to meet and confer as described above.

This order disposes of Docket No. 320.

IT IS SO ORDERED.

Dated: October 13, 2004

/s/
EDWARD M. CHEN
United States Magistrate Judge